# AFFIDAVIT OF DEA TASK FORCE OFFICER JEFFREY BROWN

I, Jeffrey Brown, being duly sworn, depose and state that:

## Agent Background and Introduction

1.     I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am a Task Force Officer ("TFO") of the Drug Enforcement Administration ("DEA") and have been so employed since April 2018. As a DEA TFO, I am an investigative or law enforcement officer of a State, within the meaning of 18 U.S.C. § 2510(7), who is empowered by law to conduct investigations for offenses enumerated in 18 U.S.C. §2516, which include violations of federal narcotics laws in violation of Title 21 of the United States Code.

2.     In 2011, I graduated from the Massachusetts Municipal Police Training Committee ("MPTC") basic reserve intermittent academy. In 2013, I graduated from the MPTC MBTA Transit Police Academy. I have been a police officer since 2012. As a Middleborough Police Officer, I was initially assigned to patrol, predominately working the 1600-0000 shift and was later deputized as an Organized Crime Drug Enforcement Task Force ("OCDETF") case specific TFO with the DEA New England Field Division ("NEFD") Financial Investigations Team ("FIT"). In April of 2018, I was assigned to the Detective Division and to the DEA, working as a TFO in the NEFD FIT.

3.     I have a Bachelor of Science degree in Criminal Justice from Bridgewater State University. I have attended numerous narcotics and money laundering investigation courses, including a two-week narcotics investigation training with the DEA, focusing on narcotics recognition, identification, and investigation, and the DEA Money Laundering Seminar in

Quantico, Virginia.

4.      During my time as a police officer and TFO, I have participated in numerous investigations and arrests involving violations of state and federal controlled substances laws, including Title 21, United States Code, Sections 841(a)(1) and 846. A number of those investigations resulted in arrests, indictments, and convictions for violations of drug laws and/or other criminal offenses, the seizure of drugs, money, and vehicles, and the forfeiture of personal property. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

5.      During my time with DEA,  I have listened to intercepted communications, reviewed transcripts of those communications, and reviewed intercepted text messages and WhatsApp messages. I also have conducted physical surveillance in connection with investigations utilizing global positioning system ("GPS") devices on automobiles and GPS information for cellular telephones to surveil targets of investigations.

6.      Based on my training and experience, I am aware that drug traffickers commonly use cellular telephones to communicate and further their drug-trafficking activities. However, drug

traffickers are aware of law enforcement's use of electronic surveillance, and thus frequently endeavor to thwart detection by changing cellular telephone numbers, using multiple cellular phones at the same time, and/or utilizing prepaid cellular phones where the user of the phone is not required to provide personal identifying information. I am also aware that drug traffickers frequently "drop" or change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am familiar with the manner in which drug traffickers use coded, veiled, or slang-filled telephone conversations when discussing their illegal business, in an effort to further prevent detection, and that they often use text and WhatsApp messages in lieu of telephone calls to avoid speaking over the telephone. I am familiar with the "street" language used by drug traffickers, as well as the methods they use to disguise their conversations and operations.

## **Purpose of Affidavit**

7. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the following device:

    a. A prepaid T-Mobile cellular phone assigned call number (857) 294-9574, with no listed subscriber, used by Jesus MUNERA-Gomez (the "Target Telephone").

8. The Target Telephone is further described in Attachment A, and the location information to be seized from the service provider is further described in Attachment B.

9. I also make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment D, to determine the location of the

Target Telephone, further described in Attachment C. This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the Target Telephone is believed to be located inside this district, because the Target Subject identified below is known to live in Massachusetts, and has recently been observed by investigators in Massachusetts. Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment D outside the district provided the device is within the district when the warrant is issued.

10. Based on the facts set forth in this affidavit, there is probable cause to believe Jesus MUNERA-Gomez ("MUNERA," or the "Target Subject") has violated federal law, including 21 U.S.C. §§841(a)(1) (distribution and possession with intent to distribute cocaine) and 846 (conspiracy to distribute and to possess with intent to distribute cocaine)(hereinafter, the "Target Offenses"). There is also probable cause to believe that the location information obtained through these warrants will constitute evidence of these crimes, including leading to the identification of individuals who are engaged in the commission of these offenses and identifying locations where the Target Subject engages in criminal activity.

11. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show that there is probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

12. Because collecting the information authorized by these warrants may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), these warrants are designed to comply with the Pen Register Statute as well as Rule 41. *See* 18 U.S.C. §§ 3121-3127. These warrants therefore include all the information required to be

included in a pen register order.  *See* 18 U.S.C. § 3123(b)(1).

## Probable Cause

13.    I have been involved in the investigation of MUNERA since approximately October 2019.  I received information from a confidential source ("CS")[1] that MUNERA was a cocaine trafficker in the Boston area.

14.    On October 23, 2019, under the direction and supervision of investigators, CS met with MUNERA to discuss potential drug transactions.  CS coordinated this meeting by contacting MUNERA on the Target Telephone.  During the recorded meeting, MUNERA told the CS that he is currently getting 20-30 kilograms of cocaine per month, shipped to the Boston area by a Mexican source of supply (via California).  MUNERA also told CS that he would pay CS $200,000 in advance to obtain 40-50 kilograms of cocaine from CS.

15.    On November 7, 2019, CS again met with MUNERA under the direction and supervision of investigators, after contacting him on the Target Telephone.  During their recorded conversation, CS told MUNERA that CS would be able to arrange for the shipment of approximately 100 kilograms to the Boston area soon.  MUNERA agreed to purchase the entire 100 kilograms from CS.  MUNERA told CS that he would give CS $100,000-$200,000 in advance of this shipment, as partial payment.

16.    In December 2019 and January 2020, under the direction and supervision of investigators, CS and MUNERA continued to discuss the incoming shipment of cocaine, and

---

[1] CS is cooperating with DEA in hopes that CS will receive consideration in connection with criminal charges and/or sentencing related to the seizure of multiple kilograms of cocaine and hundreds of thousands of dollars from his stash house in February 2019. CS has no known criminal history. CS has provided detailed information about his co-conspirators in his cocaine trafficking, which has been corroborated to the extent possible by investigators. CS has also cooperated proactively against several individuals, and is believed to be reliable.

MUNERA expressed his continued interest in purchasing the cocaine. On January 21, 2020, CS contacted MUNERA and told him that 100 kilograms of cocaine would be arriving the week of February 10, 2020, and the two agreed to meet. MUNERA confirmed that he would deliver $100,000-$200,000 to CS during this meeting. The communications were conducted by contacting MUNERA on the Target Telephone.

17. Based on the above, I believe MUNERA distributes and possesses with intent to distribute cocaine, and that he has attempted to possess with intent to distribute the kilograms of cocaine he ordered from CS, in violation of 21 U.S.C. §§ 841(a)(1) and 846. I further believe that MUNERA uses the Target Telephone, in Massachusetts, in furtherance of these crimes. The location information requested by the proposed warrants will enable investigating agents to locate MUNERA, identifying locations where he engages in criminal activity and pursue other investigative avenues.

### The Relevant Technology-Precise Location Information

18. I know that mobile phone providers have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the mobile phones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the mobile phone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the mobile telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or

more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

## Authorization Request-Precise Location Information

19. I request that the Court issue the proposed search warrants, pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41.

20. I also request that the Court direct T-Mobile, the service provider for the Target Telephone (hereinafter, the "Service Provider") to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Telephone on the Service Provider's networks, and at such intervals and times as directed by the government. The government will compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

21. I further request that, pursuant to the preclusion of notice provisions of 18 U.S.C. §§2703(b)(1)(A) & 2705(b), the Court order the Service Provider not to notify any person (including the subscribers or customers to whom the materials relate) of the existence of this application, the warrant, or the execution of the warrant, for the earlier of one year from the date of the Court's Order or upon notice by the government within 30 days of the conclusion of its investigation, unless the Court extends such period under 18 U.S.C. §2705(b). The Service Provider may disclose this Order to attorneys for the Service Provider for the purpose of receiving legal advice. Non-disclosure is appropriate in this case because the Court's Order relates to an ongoing criminal investigation that is neither public nor known to the target of the investigation,

and its disclosure may alert the target to the existence of the investigation. There is accordingly reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by giving the target an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, or intimidate potential witnesses or endanger the life or physical safety of an individual. See 18 U.S.C. § 2705(b).

22. I further request, pursuant to 18 U.S.C. §3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay any required notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. §2705. Providing immediate notice to the subscriber or user of the Target Telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. §3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. §3103a(b)(2).

23. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Telephone outside of daytime hours.

24. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court, except that the government may provide the search warrant to the Service Provider. These documents discuss

an ongoing criminal investigation that is neither public nor known to the target of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation and/or investigators' ability to apprehend the target.

25.    Based on the foregoing, I respectfully request that the Court issue the proposed search warrant providing authorization to obtain real-time precise location information for the Target Telephone.

### *Relevant Technology- Cell-Site Simulator*

28.    Based on my training and experience, I know that precise location information obtained from providers (described above) can vary in its specificity. This information can identify the Target Telephone within a general area ranging from a few meters, up to thousands of meters. In order to achieves the goals of this investigation, I know that also utilizing the electronic investigative technique, which is described in Attachment D, will help investigators determine the location of the cellular device with greater specificity within the general area identified by the provider.

29.    In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

30.    To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Telephone or receiving signals from nearby cellular devices, including the Target Telephone. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a

signal to the Target Telephone and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Telephone and use that information to determine the Target Telephone's location, even if located inside a house, apartment, or other building.

31. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Telephone, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Telephone, and law enforcement will limit collection of information from devices other than the Target Telephone. To the extent that any information from a cellular device other than the Target Telephone is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Telephone from all other cellular devices.

### *Authorization Request-Cell-Site Simulator*

32. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as pen register orders under 18 U.S.C. § 3123.

33. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer(s) executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an

adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

34. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Telephone outside of daytime hours.

35. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to the target of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

36. A search warrant may not be legally necessary to compel the investigative technique described above. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

I declare that the foregoing is true and correct.

_____
Jeffrey Brown
DEA Task Force Officer

Subscribed and sworn to before me
this _____ day of February, 2020.     February 7, 2020

_____
HONORABLE M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

      Information about the location of the mobile phone assigned (857) 294-9574 ("Target Telephone"), whose service provider is T-Mobile, a wireless telephone service provider that accepts service of process at 4 Sylvan Way, Parsippany, New Jersey.

## ATTACHMENT B

All information about the location of the Target Telephone described in Attachment A for a period of thirty days from the date of service of this warrant, during all times of day and night, including:

1. E-911 Phase II data;

2. GPS data;

3. latitude-longitude data;

4. other precise location information; and

5. data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Target Telephone.

This warrant does not authorize the collection of any content of any communications.

T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Information about the location of Target Telephone unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of Target Telephone on T-Mobile's network, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

T-Mobile shall not disclose the existence of the search warrant to the listed subscriber or to any other person for a period of one year from the date of this Order, or upon notice by the government within 30 days of the conclusion of its investigation, whichever is earlier, unless the Court extends such period under 18 U.S.C. § 2705(b). *See* 18 U.S.C. § 2705(b). T-Mobile may disclose this Order to an attorney for T-Mobile for the purpose of receiving legal advice.

## **ATTACHMENT C**

This warrant authorizes the use of the electronic investigative technique described in Attachment D to identify the location of the cellular device assigned (857) 294-9574 ("Target Telephone"), whose service provider is T-Mobile, and is believed to be used by Jesus MUNERA-Gomez.

# **ATTACHMENT D**

Pursuant to an investigation of Jesus MUNERA-Gomez for violations of 21 U.S.C. §§ 841(a)(1) and 846, this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment C by collecting and examining:

1. radio signals emitted by the Target Telephone for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the Target Telephone in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).